UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEPHEN D. KLEIN,

        Plaintiff,

v.

CITY OF LANSING,

        Defendant.
_____/

Case No. 5:06-CV-142

Hon. Richard Alan Enslen

**OPINION**

      This matter is before the Court on competing summary judgment motions of Plaintiff Stephen D. Klein and Defendant City of Lansing.[1] Oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d). For the reasons which follow, Defendant's Motion will be granted and Plaintiff's Motion will be denied.

**BACKGROUND**

      This suit was filed on October 3, 2006 seeking redress of Plaintiff's rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-33. (Compl. ¶ 16.) More particularly, Plaintiff alleges that he was on active duty of the Air National Guard from July 19, 1999 through September 17, 1999 and Defendant failed to properly credit his military service toward his retirement service for pension and retirement benefits purposes.[2] (Compl.

---

[1] Defendant originally filed its Motion as one under Federal Rule of Civil Procedure 12(b)(6) seeking dismissal. However, that Motion presented materials, including the text of the arbitration decision, which were outside the pleadings. (*See* Def.'s Br. in Supp. 7.) As such, the Motion "shall be treated as one for summary judgment . . . ." Fed. R. Civ. P. 12(b).

[2] Based on the particular language of Section 4 of Article 21 of the CBA, Plaintiff argues that he was entitled to contribute to the pension to purchase a period of pension service for at least 61 days, but not more than two years.

¶¶ 12-15.) This argument acknowledges that the matter was submitted to arbitration and that the arbitrator found against Plaintiff on the grounds that Plaintiff did receive credit for the time he performed military service (because he took vacation leave for those days) and because the particular language of the Collective Bargaining Agreement ("CBA") relied upon by Plaintiff related to military service for which the employee was not otherwise credited with employment service. (Arbitration Decision 4, 17-20.)

### SUMMARY JUDGMENT STANDARDS

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Nevertheless, summary judgment is routinely granted in labor dispute cases in which the subject matter is submitted to arbitration. This context was explained by the United States Supreme Court as follows:

> Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. *Paperworkers v. Misco, Inc.,* 484 U.S. 29, 36 . . . (1987). We recently reiterated that if an " 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.' " *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62, . . . (2000) (quoting *Misco, supra,* at 38, . . .). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense [s] his own brand of industrial justice" that his decision may be unenforceable. *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 . . . (1960).

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

These standards eliminate most factual disputes in labor arbitration cases. The sole remaining question, which is a legal question, is whether the arbitrator exceeded the authority delegated under the labor contract. *See Spero Elec. Corp. v. Int'l Bhd. of Elec. Workers*, 439 F.3d 324, 328 (6th Cir. 2006) (holding that the authority of the arbitrator was a question of law) (citing *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7,* 114 F.3d 596, 600 (6th Cir. 1997)).

**LEGAL ANALYSIS**

The briefing raises questions concerning whether the legal dispute about pension service credits is arbitrable, whether the Arbitrator drew his authority from the CBA, and whether public policy prevents enforcement of the arbitration decision.

**1. Preemption/Arbitrability**

This argument about whether the pension dispute is arbitrable surrounds the interpretation of the USERRA's preemption provision. It provides in pertinent part:

3

>This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C.A. § 4302(b).

When one reads the above language, the immediate question comes to mind whether Congress intended this provision to utterly preempt contractual arbitration impacting USERRA rights, or whether Congress intended something more limited–*i.e.,* only preemption of contractual provisions which are contradicted by USERRA's substantive provisions. One case which attempted to answer this question was the Fifth Circuit's decision in *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 678 (5th Cir. 2006). Garrett reasoned:

>An agreement to arbitrate under the FAA is effectively a forum selection clause, *see EEOC v. Waffle House, Inc.,* 534 U.S. 279, 295 . . . (2002), not a waiver of substantive statutory protections and benefits. Thus, § 4302(b) does not conflict with the FAA's policy to encourage the procedural remedy of arbitration. As recognized by the United States Supreme Court:
>
>>[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum .... We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention would be deducible from text or legislative history.
>
>*Mitsubishi,* 473 U.S. at 628 . . . . Congress took no specific steps in USERRA, beyond creating and protecting substantive rights, that could preclude arbitration.

*Id.*

In reaching this conclusion, *Garrett* took note of one part of the legislative history, a House Committee Report, which suggested that any arbitration decision (given the preemption provision)

4

should not be viewed as binding upon the service member. *Garrett* quoted the House Committee Report as follows:

> Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. *See Peel v. Florida Department of Transportation,* 600 F.2d 1070 (5th Cir. 1979); *Cronin v. Police Dept. of City of New York,* 675 F. Supp. 847 (S.D.N.Y. 1987) and *Fishgold, supra,* 328 U.S. at 285, . . ., which provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. *See McKinney v. Missouri-Kansas-Texas R. Co.,* 357 U.S. 265, 270, . . . (1958); *Beckley v. Lipe-Rollway Corp.,* 448 F. Supp. 563, 567 (N.D.N.Y. 1978). It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. *See Kidder v. Eastern Air Lines, Inc.,* 469 F. Supp. 1060, 1064-65 (S.D. Fla. 1978).

*Id.* (quoting H.R. Rep. No. 103-65, 1994, *as reprinted in* 1994 U.S.C.C.A.N. 2453.4.)

While the House Committee Report language is rather clear in its direction, the Fifth Circuit found the absence of any explicit text affecting arbitration proceedings to be the more telling circumstance. *Garrett* held as follows:

> We disagree that this snippet of legislative history should affect our interpretation of Section 4302(b). First, a powerful line of Supreme Court authority suggests that legislative history should rarely be used in statutory interpretation, because only the text of the law has been passed by Congress, not the often-contrived history. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs. Inc.,* --- U.S. ----, 125 S. Ct. 2611, 2626, . . . (2005). Even if legislative history may be consulted to resolve statutory ambiguity, *id.,* we have found no ambiguity in this provision. Second, laying aside these controlling preliminary objections, the House Committee Report appears to be the only pertinent legislative history concerning § 4302(b); no comparable Senate Report has been identified. Such a scant record, unless explicit and on point, hardly proves Congress's intention toward all cases involving arbitration. Moreover, what was left out of the legislative history is noteworthy. There is no recognition in the report of *Gilmer*'s then-recent endorsement of individual agreements to arbitrate. In any event, the totality of the quoted language, along with its imbedded citations, strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's

>substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and individual employee.

*Id.* at 679-80.

*Garrett's* reasoning suggests in part that union contracts may have special protection under USERRA while individual arbitration agreements do not. However, an examination of its actual holding reveals that only particular kinds of union arbitrations are protected by its suggested language. *Garrett* involved a dispute resolution/arbitration procedure as to which the employee was free to "opt out" of the arbitration provisions and the failure to "opt out" resulted in the characterization of the arbitration as an individual arbitration agreement. *Id.* at 674-76. The same characterization applies in this instance. Although the backdrop of the arbitration was a collective bargaining agreement which provided an elective grievance procedure, it was Plaintiff's individual choice to file and pursue the grievance, rather than union bargaining, which resulted in the later arbitration proceedings. (*See* CBA 52-53.) The resulting arbitration decision was then binding on the parties under the terms of Agreement. (*Id.*) Such an arbitration is properly characterized, as in *Garrett*, as an individual agreement to arbitrate since the terms of the CBA did not mandate arbitration as a required remedy.

Further, the holding in *Garrett* recognized a significant distinction made by the United States Supreme Court between preemption which protects substantive rights *versus* choice of procedural forums. *Garrett* cited extensively from the Supreme Court's holding in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991). *Garrett*, 449 F.3d at 674-79. It did so because the holding in *Gilmer* recognized that mere submission of a dispute to a binding arbitration, similar to a forum selection clause, is not preempted by federal discrimination statutes (similar to

USERRA) which create rights to sue federally. *Gilmer*, 500 U.S. at 26-28. The *Gilmer* holding also strongly supported the federal policy favoring arbitration as an expeditious and effective means of resolving disputes. *Id.*; *see also* 9 U.S.C. § 2. In addition to the holding in *Gilmer*, *Garrett* also recognized that the United States Department of Labor did not treat USERRA as preempting arbitration, *Garrett*, 449 F.3d at 677 n.8, and its executive judgment warranted deference. *Id.* at 678.

Notwithstanding the reasoning of the Fifth Circuit, other lower courts have come to an opposite conclusion. *See, e.g., Breletic v. CACI, Inc.--Federal*, 413 F. Supp. 2d 1329, 1337 (N.D. Ga. 2006); *Lopez v. Dillard's Inc.*, 382 F. Supp. 2d 1245, 1248 (D. Kan. 2005); *Roslyn v. Northwest Airlines, Inc.,* 2005 WL 1529937, *3-4 (D. Minn. June 29, 2005) (unpublished decision). These authorities found the distinction made in *Garrett* between substantive and procedural rights to be unpersuasive, and further found that the legislative history supported preemption of arbitration. While this is a close question, the Court sides with *Garrett* as to those collective bargaining agreements which provide an elective method for arbitrating USERRA rights. The adjudication of those rights by an arbitrator, like a court, does not "reduce, limit or eliminate" any "right" under USERRA. It simply provides a time-tested and effective mechanism for quick and efficient adjudication. The Federal Arbitration Act endorses these mechanisms as does this Court.

Therefore, the Court finds that USERRA's preemption provision does not bar arbitration nor make the resulting arbitration non-binding. This leads to the ready conclusion that this dispute about USERRA rights was arbitrable since the CBA provided access to the grievance process for any dispute regarding the Agreement, which would include disputes as to pension service. (*See* CBA 52-53.) Accordingly, the Court finds that the dispute was arbitrable and that USERRA does not preempt the arbitration provision of the CBA.

**2. Arbitration Review/Public Policy**

Having determined that the grievance was arbitrable, then further review of the arbitration decision is necessarily limited. A reviewing court must uphold an arbitration decision "unless it fails to 'draw its essence from the collective bargaining agreement.' " *Vic Wertz Distrib. Co. v. Teamsters Local 1038,* 898 F.2d 1136, 1140 (6th Cir. 1990) (quoting *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir. 1989)). An arbitration decision fails to draw its essence from a collective bargaining agreement when the arbitrator embarks on a mission to impart homespun notions of industrial justice. *See Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (citing cases). To prevent the prevalence of such homespun justice, federal courts are authorized to conduct the following limited inquiry:

> "An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement."

*Spero Elec. Corp.*, 439 F.3d 324, 328 (6th Cir. 2006) (quoting *Beacon Journal Pub. Co. v. Akron Newspaper Guild,* 114 F.3d 596, 600 (6th Cir. 1997) (internal quotations omitted)).

Additionally, since the confirmation of an arbitration award invokes the Court's equitable powers, the Court may also in narrow circumstances refuse to confirm an arbitration award which is contrary to public policy. *MidMichigan Reg. Med. Center-Clare v. Prof. Employees Div. of Local 79, Serv. Employee Intern. Union, AFL-CIO*, 183 F.3d 497, 504 (6th Cir. 1999) (citing cases). This is a limited inquiry, however:

> "[W]hen an arbitration award is challenged on public policy grounds, the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator." *Board of County*

>   *Comm'rs v. L. Robert Kimball & Assocs.,* 860 F.2d 683, 686 (6th Cir. 1988), . . .. The public policy must "be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " *W.R. Grace & Co.,* 461 U.S. [757,] 766 [(1983)], . . . (quoting *Muschany v. United States,* 324 U.S. 49 . . . (1945)).

*Id.*

In this instance, the Court's limited review of the arbitration decision confirms the award. This was a reasoned decision based upon the contract language and not an outright departure from it. The decision by Arbitrator Patrick A. McDonald was 19-pages in length and based both on the hearing testimony and the contract language. The particular language at issue is section 4 of Article 21 of the CBA, which allows a service member to purchase additional pension credit from the employer for time periods of military service not to exceed two years. (CBA 51-52.) The Arbitrator rejected Plaintiff's interpretation of the language because the section authorizing purchase contained the clause "as if the employee had served the City during that period . . . [,]" which the Arbitrator interpreted as limiting pension purchases to time periods as to which the service member did not have credited pension service. (Arbitration Decision 12, 18.) This interpretation was also confirmed by the testimony of Doris Schoening, who testified that the military pension purchase provisions were intended to allow purchase of service credit for military service prior to work place service. (*Id.* at 17-18.) While Plaintiff is free to disagree with those conclusions, the record fully supports the conclusions that: (1) the Arbitrator's decision does not contradict the agreement language; (2) the decision does not impose additional duties on the parties apart from the agreement language; (3) the decision is rationally related to and supported by the agreement language; (4) the decision is based on the agreement language rather than general notions of fairness and equity.

Regarding the public policy argument, Plaintiff urges that the USERRA statutory prohibition against discriminating against military service members who are afforded extra-statutory rights, *see* 38 U.S.C. § 4311, means this particular interpretation of the CBA is against public policy because it does not recognize the additional benefits. As argued by Defendant, Def.'s Resp. in Opp. 8, Plaintiff's discrimination argument overlooks both the basis for the Arbitrator's decision and the flexibility allowed employers under USERRA. The controlling regulations provide in pertinent part:

> (a) USERRA establishes a floor, not a ceiling, for the employment and reemployment rights and benefits of those it protects. **In other words, an employer may provide greater rights and benefits than USERRA requires, but no employer can refuse to provide any right or benefit guaranteed by USERRA.**
>
> (b) USERRA supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by USERRA, including the establishment of additional prerequisites to the exercise of any USERRA right or the receipt of any USERRA benefit. **For example, an employment contract that determines seniority based only on actual days of work in the place of employment would be superseded by USERRA, which requires that seniority credit be given for periods of absence from work due to service in the uniformed services.**
>
> (c) USERRA does not supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes an employment right or benefit that is more beneficial than, or is in addition to, a right or benefit provided under the Act. **For example, although USERRA does not require an employer to pay an employee for time away from work performing service, an employer policy, plan, or practice that provides such a benefit is permissible under USERRA.**
>
> (d) **If an employer provides a benefit that exceeds USERRA's requirements in one area, it cannot reduce or limit other rights or benefits provided by USERRA**. For example, even though USERRA does not require it, an employer may provide a fixed number of days of paid military leave per year to employees who are members of the National Guard or Reserve. The fact that it provides such a benefit, however, does not permit an employer to refuse to provide an unpaid leave of absence to an employee to perform service in the uniformed services in excess of the number of days of paid military leave.

20 C.F.R. § 1002.7 (emphasis added).

As reflected in the regulations, the decision of the employer to afford additional remedies to service members is a voluntary one, within the discretion of the employer. The decision of the Arbitrator determined only that the City of Lansing had not afforded Plaintiff in its contract language a right not guaranteed by USERRA. There is no basis in fact or in the contract language to claim discrimination because of the legal interpretation of the contract language. *See also TVA v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 520 (6th Cir. 1999). The public policy exception to arbitration enforcement does not apply.

## CONCLUSION

For the reasons given herein, Defendant's Motion will be granted, Plaintiff's Motion will be denied, and Judgment shall enter dismissing this suit with prejudice.[3]

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>May 21, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[3] Defendant also sought in its Motion the award of costs, interest and attorney fees against Plaintiff. Defendant is free to move for such relief under Fed. R. Civ. P. 54(d). However, the Court does not encourage it. Plaintiff has already lost a close case notwithstanding his history of honorable military service, and the Court is not inclined to award fees against such a litigant.